UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARRIN CRAWFORD ,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:24-cv-854

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is represented by counsel and has paid the filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Washington and Unknown Parties ##2-10. Plaintiff's Eighth Amendment claims against Defendants Unknown Party #1, Depue, and Rewerts remain in the case.

**Discussion**

I. **Factual Allegations**

According to the MDOC Offender Tracking Information System, Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan.[1] The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues MDOC Director Heidi Washington in her official capacity, and Warden Randee Rewerts, Corrections Officer Unknown Depue, and Unknown Parties Jane and John Does 1–10 in their individual and official capacities. (Comp., ECF No. 1, PageID.2.) Plaintiff specifies that Defendants are being sued in their individual capacities for monetary damages only and in their official capacities for injunctive and declaratory relief only. (*Id.*, PageID.3.)

Plaintiff alleges that he suffers from an impairment to the use of his legs and is confined to a wheelchair. (*Id.*) Plaintiff states that DRF is a multitiered facility with several floors and that access between floors requires either the use of stairs or an elevator. (*Id.*) Plaintiff states that the elevator is critical for people like himself, who have mobility issues, and that while there is another way for incarcerated persons to leave for chow and medline without use of the elevator, it requires corrections officers to open a door to the outside, and that corrections officers routinely refuse to open that door. (*Id.*, PageID.4.)

Beginning on July 13, 2023, the elevator in Housing Unit 800 began to experience serious maintenance issues. (*Id.*) At various times, the elevator was designated as "out of service" while maintenance was allegedly being performed. (*Id.*) Plaintiff claims that this maintenance was

---

[1] *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=193496 (last visited Oct. 15, 2024).

performed by MDOC personnel rather than by an individual from the company that installed the elevator and was not effective, so that the elevator had problems again within weeks, if not days. (*Id.*) Plaintiff states that the problems with the elevator included doors not properly opening or closing, unintended movements of the elevator causing occupants to lose their balance, and the floor of the elevator sinking suddenly. (*Id.*)

Plaintiff asserts that DRF staff, including Defendant Rewerts and Unknown Parties ##1–10 were informed of the problems with the elevator by multiple inmates and knew that the elevator was often inoperable. Defendant Rewerts specifically received in-person complaints from numerous inmates during rounds. (*Id.*, PageID.5.)

Plaintiff claims that Defendant Rewerts was aware of the fact that staff routinely ignored issues with the elevator and removed "out of order" signs and failed to reprimand any employees for this conduct or to instruct them not to use the elevator when it was malfunctioning. (*Id.*) Plaintiff also contends that Defendant Rewerts was aware of the fact that inmates had suffered injuries as a result of using the elevator when it was malfunctioning. (*Id.*)

Plaintiff asserts that days before he was injured using the elevator, the elevator company had been to DRF and had placed an "out of order" sign on the elevator. (*Id.*) Defendant Unknown Party #1, a third shift officer, subsequently removed the "out of order" sign, even though the elevator had not been repaired. (*Id.*) Plaintiff believes that Defendants Rewerts and/or Defendant Unknown Parties ##2–10 made a conscious decision not to have the elevator repaired by qualified technicians or replaced. (*Id.*, PageID.6.)

Plaintiff alleges that on August 17, 2023, non-party Mark Shaykin complained to Defendant Depue about the elevator, informing him that as Mr. Shaykin was exiting the elevator, it dropped approximately four inches and could have caused him to be injured. (*Id.*) Defendant

Depue failed to take the elevator out of service. On the same date, at 9:56 p.m., the elevator malfunctioned with Plaintiff inside. Plaintiff alleges that the door opened, and he began to exit the elevator. When both front wheels of his wheelchair were out of the elevator, it suddenly began descending, which caused Plaintiff to be tossed out of his wheelchair and the chair to land on top of Plaintiff. (*Id.*) Plaintiff states that he hit his head and right shoulder on the wheelchair and the floor. (*Id.*)

Plaintiff was taken to medical in severe pain with a lump on his hand and his head but was only given Tylenol. (*Id.*, PageID.6-7.) Plaintiff states that since this incident, he has experienced long headaches, difficulty moving about, and sharp pain in his back, hand, and shoulder on a regular basis. (*Id.*, PageID.7) The elevator continued to malfunction following Plaintiff's accident.

Plaintiff filed several grievances related to this issue, first on July 15, 2023, complaining that the elevator was not working, and also on August 19, 2023, noting the injuries that he suffered as a result of the accident. (*Id.*)

Plaintiff claims that Defendants violated his rights under the Eighth Amendment, as well as under state law. Plaintiff seeks nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.11-12.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Ordinarily, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity; in this case, it is the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Nevertheless, an official-capacity action seeking prospective injunctive or

declaratory relief constitutes an exception to sovereign immunity. *Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). However, as the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 114 n.25.

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court explained why the doctrine of *Ex parte Young* could not be extended to authorize retrospective relief:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra*, 465 U.S. at 102. *See also Milliken v. Bradley*, 433 U.S. 267 (1977). But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Id*. at 68.

In this case, as noted above, Plaintiff specifies that Defendants are being sued in their official capacities for injunctive and declaratory relief only. (ECF No. 1, PageID.3.) Plaintiff states that he is seeking prospective injunctive relief to ensure that elevators are serviced by properly qualified technicians and that inoperable or malfunctioning elevators are repaired within a reasonable time. Plaintiff also seeks an injunction to ensure that elevators which are inoperable, or

6

malfunctioning are taken out of service and remain so until properly fixed. (*Id.*, PageID.11-12.) Therefore, with respect to Plaintiff's official capacity claims for prospective injunctive relief, such claims do not appear to be barred by the Eleventh Amendment.

### B. Heidi Washington

Plaintiff fails to make specific factual allegations against Defendant Washington. Instead, Plaintiff merely states that Defendant Washington was employed as the Director of the MDOC during the pertinent time period. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Washington.

### C.    Eighth Amendment Claims

As noted above, Plaintiff states that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states

7

to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the

8

subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.     Unknown Parties ##2–10

Plaintiff lists 10 Defendants using pseudonyms: John or Jane Does with a number, 1 through 10. In *Kissner v. Orr*, No. 22-2076, 2023 WL 5687037, at *4 (6th Cir. Aug. 31, 2023), the Sixth Circuit described the proper use of "John Doe" parties. In *Kissner*, the Plaintiff intended to sue the emergency dispatch officer who answered the 911 call that led to Plaintiff's being taken into custody. He did not know the officer's name. The court concluded that "Plaintiffs are permitted to bring suit against unnamed 'John Doe' defendants until discovery or other information reveals the identity of the party." *Id*. (quoting *Brown v. Owens Corning Inv. Rev. Comm.*, 622 F.3d 564, 572 (6th Cir. 2010), *abrogated on other grounds by Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768 (2020)).

In *McNeal v. Hargett*, No. 1:20-cv-596, 2023 WL 5057948 (W.D. Mich. May 22, 2023), *R & R adopted in relevant part*, 2023 WL 4311397, at *8 (W.D. Mich. Jul. 3, 2023).[2] this Court considered the proper use of the John Doe pseudonym, explaining:

> In his amended complaint, Plaintiff names as defendants an unidentified number of John Does. Plaintiff makes no factual allegations in his amended complaint against any John Does. Instead, Plaintiff states that he added these John Does to his

---

[2] Plaintiff's appeal of this Court's decision regarding the pseudonymous defendants was determined to be frivolous. *McNeal v. Hargett*, No. 23-1673 (6th Cir. Mar. 4, 2024).

9

>
> amended complaint in the event he later learns that such persons "were involved in or responsible for the MDOC policies and actions" that violated his rights. It is not proper for a plaintiff to name persons as defendants in the event subsequent facts support claims against them. The proper approach is, once a plaintiff learns of facts supporting additional claims or causes of action, to move the Court to amend the complaint. Accordingly, the undersigned recommends that the John Doe Defendants be dismissed from Plaintiff's amended complaint.

*Id*. at *6.

Plaintiff has offered facts to identify one of the pseudonymous defendants: John Doe 1, a third shift officer[,] removed the 'out of order' sign on the elevator despite it not being repaired." (Compl., ECF No. 1, PageID.5, ¶ 27.)[3] As to John Does## 2–10, on the other hand, it is not at all clear that Plaintiff offers any facts; instead, he appears to be identifying a generic category of persons who might be liable. Plaintiff describes these Defendants as follows:

> 7.     Jane and John Does 2–10 are all persons employed by the Michigan Department of Corrections and responsible for the maintenance of, scheduling of maintenance, and/or approval of maintenance for the elevator at issue in this lawsuit. Jane and John Does 1–10 also include persons responsible for authorizing the elevator to be used despite knowing that it was unsafe.
>
> \*   \*   \*
>
> 21.    Staff at DRF, including Defendant Rewerts and Jane and John Does 1–10, were aware of the issues with the elevator due to being informed by multiple inmates and because the elevator was often inoperable.
>
> \*   \*   \*
>
> 28.    Staff at DRF, including Defendant Rewerts and Jane and John Does 1–10, were aware of the issues with the elevator due to being informed by multiple inmates and because the elevator was often inoperable.
>
> 29.    This decision was made by Defendants Rewerts and/or Jane and John Does 1–10.

---

[3] *See also* (Compl., ECF No. 1, PageID.10, ¶¶ 60, 62 ("John Doe 1 removed an 'out of order' sign on the elevator so that it would continue to be used by disabled persons like Mr. Crawford despite being unsafe. . . . Had Defendant John Doe 1 not removed the 'out of order sign from the elevator Mr. Crawford would not have used the malfunctioning elevator and sustained his injuries."). )

10

\* \* \*

> 54. Defendants Randy Rewerts and Jane and John Does 1–10 were deliberately indifferent to Mr. Crawford by failing to ensure that he was provided with safe access to the bottom floor of his unit.
>
> 55. Defendants Rewerts and Jane and John Does 1–10 were aware that the elevator was used by people who were mobility limited.
>
> 56. Defendants Rewerts and Jane and John Does 1–10 were aware that the malfunctions could pose a threat to the safety of prisoners such as Mr. Crawford.
>
> 57. Defendants Rewerts and Jane and John Does 1–10 were aware that the elevator was malfunctioning, as is evidenced by the continued requests for maintenance, Plaintiff's grievances alerting them to the issue, their personal inspections of the facility, and complaints from other people who needed to use the elevator.

(*Id.*, PageID.2, 5–6, 9.)[4]

Plaintiff's use of the pseudonym for John Doe #1 is similar to the situation in *Kissner*. Plaintiff knows that a third shift officer removed the out of order sign. He does not know the officer's name—he believes his last name to be "James," (*Id.*, PageID.2, ¶ 6)—but he knows that there is a specific person who exists. Plaintiff's use of the pseudonym for John or Jane Does ## 2–10, is more like McNeal's identification of John Doe "persons [who] 'were involved in or responsible for the MDOC policies and actions' that violated his rights." 2023 WL 5057948, at *6. Plaintiff simply throws out a conclusory set of criteria that might establish some liability without knowing whether any individual matches those criteria. Rather than anticipatorily and conclusorily dropping in a bunch of numbered pseudonymous parties, the proper approach is, once a plaintiff learns of facts supporting additional claims or causes of action, to move the Court to

---

[4] The Court does not include the paragraphs where Plaintiff makes allegations regarding "Defendants" because such allegations do not support the inference that each person included within that category is liable. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable").

amend the complaint. Accordingly, the Court will dismiss Plaintiff's claims against John or Jane Does ## 2–10.

### 2. Unknown Party #1, Officer Depue, and Warden Rewerts

As set forth above, Plaintiff alleges that sometime before his accident, Defendant Unknown Party #1 removed the "out of order" sign from the elevator, even though the elevator had not been repaired. Plaintiff states that he and non-party Mark Shaykin were placed at risk as a result of this action. Plaintiff alleges that following Mr. Shaykin's experience, Mr. Shaykin specifically informed Defendant Depue that the elevator had just dropped approximately four inches as he was exiting the elevator and could have caused him to be injured. Defendant Depue failed to take the elevator out of service despite his awareness of the danger and on the same date, the elevator malfunctioned with Plaintiff inside, resulting in his injuries.

Plaintiff's allegations against Warden Rewerts reveal a more attenuated connection between that defendant's actions and Plaintiff's injury. Nonetheless, Plaintiff's allegations regarding the warden's knowledge permit, even if they do not strongly support, the inference that he was aware of a substantial risk of serious harm to inmate health and safety and that he ignored that risk to Plaintiff's detriment.

The Court concludes that although Plaintiff's allegations against Defendants Unknown Party #1, Depue, and Rewerts are largely conclusory, at this point in the litigation, his Eighth Amendment claims against those Defendants are not properly dismissed.

### D. State Law Claims

Plaintiff asserts that "[t]he Court has supplemental jurisdiction over the Plaintiff's State law claims . . . " (Compl., ECF No. 1, PageID.3.) In determining whether to exercise supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

The Court has carefully reviewed the complaint and concludes that the only claim Plaintiff has attempted to state is a claim under 42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment rights. It is certainly possible that the facts alleged might support a state-law claim; but Plaintiff has not raised one in this complaint. To the extent that Plaintiff is asserting state law claims, the Court declines to exercise supplemental jurisdiction over those claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Washington and Unknown Parties ##2-10 will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). To the extent that Plaintiff seeks to pursue law claims against Defendants, such claims are dismissed without prejudice. Plaintiff's Eighth Amendment against Defendants Unknown Party #1, Depue, and Rewerts remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 21, 2024                              /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      United States District Judge